UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | CAUSE NO.: 2:13-CV-409-JTM-PRC | |
| ) | | |
| MIGUEL SERRATO, individually and ) | | |
| d/b/a Miguel's Mexican Fusion Grill, and ) | | |
| MIGUEL MEXICAN FUSION GRILL, ) | | |
| LLC, an unknown business entity d/b/a ) | | |
| MIGUEL'S MEXICAN FUSION GRILL, ) | | |
| Defendants. ) | | |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Motion for Default [Judgment] [DE 16], filed by Plaintiff Joe Hand Promotions, Inc. on August 14, 2014.

On August 20, 2014, District Court Judge James T. Moody entered an Order [DE 17] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that Judge Moody grant the motion.

**PROCEDURAL BACKGROUND**

On November 14, 2013, Plaintiff Joe Hand Promotions, Inc. filed a Complaint against Defendants Miguel Serrato, individually and d/b/a Miguel's Mexican Fusion Grill, and Miguel Mexican Fusion Grill, LLC, an unknown business entity d/b/a Miguel's Mexican Fusion Grill. Therein, Plaintiff alleges that it paid for and was granted the exclusive nationwide television distribution rights to *Ultimate Fighting Championship 130: Mauricio "Shogun" Rua v. Dan*

*Henderson, Championship Fight Program* ("Program"), a nationwide telecast that took place on Saturday, November 9, 2011. Pursuant to contract, Plaintiff entered into sublicensing agreements with commercial entities throughout North America, by which Plaintiff granted limited sublicensing rights, specifically the rights to publicly exhibit the Program to the patrons within the sublicensees' respective establishments (i.e. hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.). Plaintiff expended substantial money marketing, advertising, promoting, administering, and transmitting the Program to these commercial entities. Defendants, with full knowledge that the Program was not to be intercepted, received, and exhibited by entities unauthorized to do so, unlawfully published, divulged, and exhibited the Program at the time of its transmission at the Schererville, Indiana location (2330 Cline Avenue, Schererville, Indiana, 46375). Plaintiffs allege that Defendants' actions were done willfully and for purposes of direct or indirect commercial advantage or private financial gain. Count I is brought under 47 U.S.C. § 605, Count II is brought under 47 U.S.C. § 553, and Count III is a state law claim of conversion.

Defendants were served with a copy of the Complaint and Summons by a Lake County, Indiana, Sheriff's Department Deputy Sheriff by leaving a copy at the dwelling house or usual place of abode of Miguel Serrato, an individual defendant and the agent of the entity defendant, on April 11, 2014, and by mailing a copy to that address. Defendants have failed to Answer or otherwise plead to the Complaint and have not appeared personally or by a representative.

On July 30, 2014, Plaintiff filed a Motion for Entry of Default pursuant to Federal Rule of Civil Procedure 55(a), and on August 5, 2014, a Clerk's Entry of Default was entered against both Defendants.

On August 14, 2014, Plaintiff filed the instant Motion for Default Judgment. On August 20, 2014, Judge Moody referred the motion to the undersigned Magistrate Judge. On August 21, 2014, the matter was set for hearing for October 14, 2014.

On October 10, 2014, Plaintiff filed (1) the Affidavit of Joe Hand, Jr. in support of the Motion for Default Judgment (Docket Entry 19-1; Hearing Exhibit 1); (2) the Declaration of Attorney Thomas P. Riley, regarding attorney fees and costs (Docket Entry 20-1; Hearing Exhibit 3); and (3) the Affidavit of Attorney Charlie W. Gordon, regarding attorney fees (Docket Entry 21; Hearing Exhibit 4). On October 13, 2014, Plaintiff filed a second Affidavit of Joe Hand, Jr., a rate sheet for Joe Hand Promotions, Inc., the Affidavit of investigator Joseph Lill, and the bill for the investigative services of Lill (Docket Entries 22-1, 22-2, 22-3, 22-4, respectively; collectively Hearing Exhibit 2).

On October 14, 2014, the Court held a hearing on the Motion for Default Judgment with Plaintiff present by counsel, admitting evidence into the record and hearing argument.

## DISCUSSION

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Unum Life Ins. Co. of Am. v. Nichols*, No. 1:07CV50, 2008 WL 313443, *2 (N.D. Ind. Feb. 4, 2008) (citing *Hill v. Barbour*, 787 F. Supp. 145, 148 n.4 (N.D. Ill. 1992)). Under Rule 55(a), the clerk is to enter the default of a party against whom a judgment is sought when that party has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a). Because the Clerk of Court entered default against Defendants on August 15, 2014, the Court may enter default judgment under Rule 55(b)(2).

3

In his Affidavit, Joe Hand, Jr., President of Plaintiff Joe Hand Promotions, Inc., explains that Plaintiff is a closed-circuit distributor of sports and entertainment programming. Plaintiff purchased and retained the commercial exhibit licensing rights to the Program, which was broadcast on November 19, 2011. Plaintiff then marketed the sublicensing rights in the Program to Plaintiff's commercial customers. The Program included several televised under-card bouts, color commentary, and the main event prize fight.

Commercial customers that contract with Plaintiff pay a commercial sublicense fee to broadcast the Program in their establishments. The sublicense fee is based on the capacity of the establishment and varies for each event. For the Program, the rate chart for the "High and Standard Definition Price" was based on the Fire Code Occupancy rating for the establishment. The fee for an establishment with a Fire Code Occupancy of 0-50 was $750.00 and of 101-125 was $1,100. The highest listed fee of $3,750.00 was for a Fire Code Occupancy of 451-500.

Hand avers that, to the best of his knowledge, Plaintiff's programming is not and cannot be mistakenly, innocently, or accidentally intercepted. He sets forth several ways in which signal pirates unlawfully intercept and broadcast Plaintiff's programming, which include the modification of electronic equipment, the misrepresentation of a commercial establishment as a residential one, the removal of cable traps or devices designed to prevent unauthorized viewing, and other acts purposefully designed to obtain the programming unlawfully.

Hand states that the "unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities." (Hearing Ex. 1, p. 4). He believes that

persistent signal piracy of Plaintiff's programming costs the company, its customers, and their communities millions of dollars annually.

Hand avers that signal pirates do not generally advertise the fact that they intend to exhibit programming unlawfully to the public for the practical reason that they wish to avoid the risk of detection. However, they may promote the unlawful exhibition of programming by word of mouth or advertising that goes undetected by Plaintiff's monitors. Hand also explains that these establishments generally do not increase their prices or charge a cover charge on the evening the pirated programming is shown.

In this case, Defendants did not lawfully license the Program from Plaintiff for the purpose of exhibiting the Program at Miguel's Mexican Fusion Grill on Saturday, November 19, 2011. In his Affidavit, investigator Joseph Lill avers that the Program, including three fights, was shown on three of the six 42" flat screen televisions at Miguel's Mexican Fusion Grill that date. Over the course of the evening, from 8:50 p.m. to 10:03 p.m., Lill counted the number of people in the establishment on three occasions, counting 8, 10, and 10 people respectively. Although there were no flyers directly advertising specific fights that would be shown, there was a board behind the bar that read "Fight Night Specials," which included $1 Miller Lite bottles.

In Count I, Plaintiff alleges that Defendants violated 47 U.S.C. § 605(a), which prohibits commercial establishments from intercepting satellite signals and broadcasting them, and in Count II, Plaintiff alleges that Defendants violated 47 U.S.C. § 553(a)(1), which prohibits intercepting or receiving unauthorized cable signals. *See United States v. Norris*, 88 F.3d 462, 466-67 (7th Cir. 1996); *J&J Sports Prods., Inc. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 351 (5th Cir. 2014). As a result of the default, Defendants are deemed to have unlawfully intercepted the Program and

shown it to their patrons and to have done so willfully and for the purposes of direct and indirect commercial advantage or private financial gain.

Whether § 605 or § 553 applies depends on whether Defendants intercepted the transmission from a satellite or a cable transmission. The allegations of the Complaint and the evidence introduced at the hearing do not identify the nature of the transmission. At the hearing, counsel for Plaintiff clarified that Plaintiff does not know whether Defendants illegally acquired the signal to show the Program on November 19, 2011, by cable or satellite. Under § 553, aggrieved parties are entitled to a sum of statutory damages of not less than $250 or more than $10,000, and, if the party willfully commits the violation, the Court may grant an award of damages of not more than $50,000. 47 U.S.C. § 533(c)(3)(A)(ii), (c)(3)(B). Under § 605, aggrieved parties are entitled to statutory damages of not less than $1,000 or more than $10,000, and if the party willfully commits the violation, the Court may grant an award of damages of not more than $100,000. 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii). At the hearing, Plaintiff asked that the Court award the maximum amount of damages requested in Count I under § 605, rather than under § 553 or the state law conversion claim, voluntarily abandoning the claims in Counts II and III. Because the Court finds that the proper award of damages falls within the parameters of both statutes, it is not necessary for the Court to determine which statute applies. *See J&J Sports Prods., Inc. v. Zarco*, No. 1:12-CV-1642, 2013 WL 4829222, at *3 (S.D. Ind. Sept. 9, 2013) (citing *J&J Sports Prods., Inc. v. Turrubiatres*, No. 1:11-CV-1496, 2013 WL 3878740, at *2 (S.D. Ind. July 26, 2013)).[1]

---

[1] Courts have also held that when the means of transmission has not been determined but when, "under the circumstances of the case, . . . the plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of the defendants' failure to appear or defend in this adjudication, [plaintiff] should not suffer the resulting prejudice." *J&J Sports Prods., Inc. v. Estrada*, No. 14 C 2518, 2014 WL 2609751, at *2 (N.D. Ill. June 11, 2014); *see also J&J Sports Prods., Inc. v. Gonzales*, No. 1:11-CV-1492, 2013 WL 4777209, at *2 (S.D. Ind. Sept. 5, 2013).

Both § 605 and § 553 allow for a damages award to be computed as either actual damages or statutory damages, and Plaintiff seeks statutory damages. Courts within the Seventh Circuit Court of Appeals have often applied a "per patron rate" for calculating statutory damages. *See J&J Sports Prods., Inc. v. Homestyle Restaurant Group, LLC*, No. 13-CV-506, 2014 WL 4072132, at *3-4 (E.D. Wis. Aug. 15, 2014) (discussing the history of the "per patron rate"); *see also J&J Sports Prods. v. Estrada*, No. 14 C 2518, 2014 WL 2609751, at *3 (N.D. Ill. June 11, 2014). In 1996, courts increased the per patron rate to $55, and recently, the court in *Homestyle Restaurant Group* suggested that the rate should be increased to $80 to allow for inflation for a violation that occurred in 2011. *Id*. The per patron rate is multiplied by the number of patrons in the establishment. Over the course of the evening on November 19, 2011, Lill observed a maximum of 10 people in Miguel's Mexican Fusion Grill while the Program was airing. At a rate of $80 per patron, statutory damages would be $800.00.

However, Plaintiff has admitted into evidence its rate chart for the Program that evening. The rate chart provides a "High & Standard Definition Price" that Plaintiff charges its customers based on the "Fire Code Occupancy" of the customer's business. Investigator Lill's Affidavit states that the occupancy for Miguel's Mexican Fusion Grill was 120 people. The rate chart provides for a fee of $1,100.00 for an establishment with a Fire Code Occupancy of 101-125. Thus, Defendants should have paid $1,100.00 to acquire the rights to lawfully broadcast the Program that night. When the fee on the rate chart would yield a higher award than an award based on the per patron method of calculation, courts award damages based on the rate chart. *See Homestyle Restaurant Group*, 2014 WL 4072132, at *4 (citing *J&J Sports Prods., Inc. v. El Canaveral LLC*, No. 13-CV-1384, 2014 WL 580779, at *3 (E.D. Wis. Feb. 14, 2014); *Estrada*, 2014 WL 2609751, at *3. Thus, the Court finds that a statutory damages award based on the rate card is appropriate in the amount of $1,100.

In addition, the court, in its discretion, may increase the award of damages, whether actual or statutory, if the "court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); 47 U.S.C. § 553(c)(3)(B). For such a violation, the damages award may be increased to $100,000 under § 605 and to $50,000 under § 553. When determining the amount of enhanced damages, courts consider a number of factors, including "(1) the number of violations; (2) defendants' unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendants advertised for the event; and (5) whether the defendant[s] collected a cover charge on the night of the event." *Estrada,* 2014 WL 2609751, at *3 (citing *Ramirez,* No 08 C 03354, at 2 (citing *Kingvision Pay–PerView, Ltd. v. Rodriquez*, No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003))). Courts also consider the deterrent effect of the award. *Id.* (citing *Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Rest. Corp.*, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Rodriguez,* 2003 WL 548891, at *2).

Defendants' statutory violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. The appropriation of the signal for the Program without a license could not have occurred without some willful and intentional action by Defendants, whether it be modification of electrical equipment, misrepresentation of the restaurant as a residential establishment, the removal of detection devices, or some other intentional act. Although there was no cover charge or known advertising of the event, the Court finds that these are not necessarily indicia of Defendants' willfulness, given that both advertising and a cover charge would tend to attract unwanted attention to the illicit activity. The Court notes that Defendant advertised "Fight Night Specials" within the establishment and that half of the large flat screen televisions were showing the Program, indicating that the Program was the main entertainment that evening.

However, there is no evidence in this case of other violations. And, although the capacity of the venue was 120, there were no more than 10 patrons at any one time during the period that the investigator was in the establishment. Thus, the facts suggest that the broadcast of the Program that evening was not "a grand commercial scheme." *See Joe Hand Promotions, Inc. v. RLA Enter., LLC*, No. 12-CV-1135, 2013 WL 308956, at *2 (E.D. Wis. Jan. 25, 2013). Nevertheless, enhanced damages are warranted to deter future conduct.

The Court calculates the enhanced damages based on Plaintiff's rate chart. The rate chart includes fourteen categories of Fire Code Occupancy rates, beginning with 0-50 occupants and ending with 451-500 occupants. If Defendants had obtained a license to legally broadcast the Program, Defendants would have been in the fourth category based on a maximum occupancy of 120. (The first four categories are 0-50, 51-75, 76-100, and 101-125.) Because Defendants were in the fourth category regarding the size of the establishment, the Court multiples the statutory damages of $1,100 by four for an enhanced damages award of $4,400. Thus, the total damages award should be $5,500 ($1,100 in statutory damages plus $4,400 in enhanced damages).

In addition, Plaintiff is entitled to the recovery of full costs, including an award of reasonable attorney fees, under either 47 U.S.C. § 605(e)(3)(B)(iii) or 47 U.S.C. § 553(c)(2)(C). The following costs and attorney fees are properly awarded in a total amount of $3,110.00:

| | | |
|---|---|---|
| 1. | Investigative costs | $575.00 |
| 2. | Filing fee | $400.00 |
| 3. | Advance to local counsel to identify and serve initiating suit papers upon Defendants | $100.00 |
| 4. | Additional service of process charge | $20.00 |
| 5. | Attorney fees for national counsel Thomas P. Riley (.700 hours x $400.00/hour) | $280.00 |
| 6. | Fees for Mr. Riley's administrative assistant (1.300 hours x $75.00/hour) | $97.50 |
| 7. | Fees for Mr. Riley's paralegal (1.150 hours x $100.00/hour) | $115.00 |

| 8. | Attorney fees for local counsel Charlie W. Gordon (8.7 hours x $175/hour) | $1,522.50 |
|---|---|---|
| | Total | $3,110.00 |

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Judge Moody **GRANT** the Motion for Default [Judgment] [DE 16]. The Court **RECOMMENDS** that Judge Moody enter judgment in favor of Plaintiff Joe Hand Promotions, Inc. and against Defendants Miguel Serrato, individually and d/b/a Miguel's Mexican Fusion Grill, and Miguel Mexican Fusion Grill, LLC, an unknown business entity d/b/a Miguel's Mexican Fusion Grill, jointly and severally on Count I of Plaintiff's Complaint in the sum of $5,500.00, plus attorney fees and costs of $3,110.00. The Court **RECOMMENDS** that Judge Moody dismiss with prejudice Counts II and III.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 16th day of October, 2014.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc:   All counsel of record